UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-02339-WYD

GARY A. KEMPER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for Supplemental Security Income ["SSI"] benefits under Title XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 1381-83c. For the reasons stated below, this case is reversed and remanded for further factfinding.

Plaintiff was 32 years old on his alleged onset of disability date and 46 years old on the date of the ALJ's decision. (Transcript [Tr."] 20, 74.) He has an eleventh grade education, and previously worked as a telephone answering service operator, welder, and structural steel worker. (*Id.* 82, 106.) Plaintiff's application claimed that he became disabled on January 10, 1994, due to neck and back problems. (*Id.* 77.) Plaintiff's claims were denied at the initial determination stage. (*Id.* 36-39.)

The Administrative Law Judge ["ALJ"] held a hearing on July 12, 2007. (Tr. 119-41.) In a decision dated July 19, 2007, the ALJ concluded that Plaintiff was not disabled

within the meaning of the Act. (*Id.* 9-20.) This was based on his finding at step two of the sequential evaluation that the objective medical evidence failed to establish the existence of a medically determinable impairment that could be expected to produce Plaintiff's symptoms. (*Id.* at 18.) This decision is discussed in detail below.

The Appeals Council denied Plaintiff's request for a review. (Tr. 4-6.) The ALJ's decision is the final administrative decision, and this case is ripe for review pursuant to 42 U.S.C. § 405(g).

II. ANALYSIS

A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.  The ALJ's Decision

The ALJ found that while Plaintiff alleges disability since January 10, 1994 due to neck and back problems, he has not seen any medical physician since 2000. (Tr. 18.) He further found that the neurological evaluation of April 2000 by Dr. Turner:

> showed some borderline disc space height loss at C4-5 and C5-6, but this is extremely minimal, and there is certainly no evidence of disc herniation. There was felt to be a little bit of uncinate hypertrophy on the right at C3-4 and C4-5, though, I cannot honestly say that it looked to be that abnormal. In the thoracic region, he has some mild bulging of the disc at T8-9, but these are not particularly changed from the studies a number of years ago.

(*Id.*)

Dr. Turner advised the claimant to do therapy and "whatever treatments he feels helps him" and that "there is really nothing I have to offer." (Tr 18.) The ALJ stated that there is no indication that the claimant underwent therapy, or any other treatment. (*Id.*) The ALJ also discussed a subsequent evaluation by Dr. Repert who assessed Plaintiff with "chronic back pain", with nothing acute going on. (*Id.* at 19). The ALJ further noted that this is the claimant's fourth attempt to get SSI. (*Id.* at 18.)

The ALJ then turned to the disability evaluation by Dr. Stan Jack, DO, who assessed Plaintiff with "mechanical low back pain, suspect degenerative disc disease and there is evidence of lumbar scoliosis, neck pain, mechanical, again suspect degenerative disc disease, we will be obtaining films today." (Tr. at 18.) Subsequent diagnoses showed "loss of normal cervical curve, most likely. . . secondary to muscle spasm, minimal disc space narrowing of C3-4, the remainder of the exam is unremarkable" and "minimal disc space narrowing is noted at L5-S1. . . . " (*Id.* at 18-19.)

The ALJ stated from these findings that "it appears Dr. Jack's *suspicions* were not confirmed." (*Id.* at 19) (emphasis in original).

The ALJ considered the limitations assessed by Dr. Jack, including his finding that "the number of hours the claimant could be expected to stand in an eight-hour workday is less than two hours *given his significant low back pain and neck pain* (emphasis supplied), the number of hours the claimant could be expected to sit in an eight-hour workday is less than six hours with breaks every hour because of his mechanical low back pain" and that Plaintiff should not lift more than 20 pounds on an occasional basis and 20 pounds frequently due to his pain. (*Id.*) The ALJ chose to give Dr. Jack's opinions as to Plaintiff's limitations no weight. (*Id.*)

In that regard, he found that "Dr. Jack relied quite heavily on the subjective report of symptoms and imitations provided by the claimant, and seems to uncritically accept as true most, if not all, of what the claimant reported, particularly his *significant low back pain and neck pain.*" (*Id.*) However, the ALJ found that "there exists good reasons for questioning the reliability of the claimant's subjective complaints." (*Id.*) Further, the ALJ found that the record as a whole did not support Dr. Jack's opinions, based on Plaintiff's testimony and the fact that Plaintiff was able to walk for several miles to see Dr. Repert. (*Id.*) The ALJ also found that Plaintiff "takes no prescription narcotic pain medication, nor has any physician, including Dr. Jack, suggested a need to do so, and the undersigned finds the claimant's 'occasional use of over-the-counter' medicines inconsistent with allegations of disabling pain." (*Id.*)

>    The ALJ concluded:
>
>    Despite alleging he is disabled, the claimant has not sought any medical treatment, nor even any conservative modalities such as physical therapy or chiropractic sessions. At the hearing the claimant testified he attends to his own personal needs and hygiene, does some housework, throws a baseball, goes dancing, has an occasional beer, studies the law, watches television, and helps his mother pull weeds from the flowers.
>
>    Accordingly, the objective medical evidence contained in the record does not establish the existence of a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms.

(Tr. at 19-20.) The ALJ thus found that Plaintiff was not disabled at step two.

  C. <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

  Plaintiff is proceeding on a *pro se* basis. His briefs do not provide any argument as to why the Commissioner erred in the decision denying Plaintiff SSI benefits. Instead, he refers, without any explanation for the citations, to Case No. 07-1411 in the Tenth Circuit and Case No. 07-cv-01538-ZLW, a case in this Court where Mr. Kemper was a plaintiff in a case which did not involve the Social Security Administration or Commissioner. Plaintiff also refers to the 1980 Amendment to 28 U.S.C. § 2412, Unfair Competition-Deceptive Practices, Bad Faith and "Judicial Review and State Courts by Section 2.5 of the Judiciary Act of 1789", again without any explanation as to how the authority cited supports his claim.

  Finally, in supplemental authority filed December 1, 2008, Plaintiff refers to Case No. 03-cv-00058-PSF-PAC at Doc. # 8, 14 and 28, another social security case brought by Plaintiff. Judge Figa ruled in favor of the Commissioner in that case and affirmed the decision of the ALJ. The Tenth Circuit affirmed Judge Figa's decision. Plaintiff fails to explain how that case or the pleadings referenced therein impact the appeal at issue.

I find that Plaintiff has not stated grounds to reverse the Commissioner's decision, as he does not assert any grounds for vacating the Commissioner's decision. Nonetheless, since Plaintiff is proceeding pro se, I review the record to determine whether the Commissioner's decision is supported by substantial evidence or whether there are any grounds for reversal.

Turning to my analysis, I find that the ALJ erred at step two in connection with his assessment of Plaintiff's impairments. The ALJ rejected entirely the opinion of the agency's own consulting physician, Dr. Jack, which I find was not inconsistent with the findings of the treating physicians. I find that the ALJ failed to properly weigh these opinions, and that the case must be remanded to the Commissioner for further findings on this issue.

"Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. 2004) (quotation omitted).[1] "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004)). In order to make this showing, it must be demonstrated that a particular impairment has "more than a minimal effect" on a claimant's ability to work. *Williams v. Bowen*, 844

---

[1] I have cited this and other unpublished opinions in this Order because the cases have persuasive value with respect to material issues that have not been addressed in a published opinion and/or they will assist me in the disposition of this case. 10th Cir. R. 36.3(B).

F.2d 748, 751 (10th Cir. 1988). An impairment need not be independently disabling to be considered severe.

The opinion of an examining physician or psychologist must be evaluated and weighed as an expert opinion. 20 C.F.R. § 416.927; Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2. Generally, the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).

In the case at hand, the ALJ gave no weight to Dr. Jack's opinions. I find that the ALJ did not properly weigh the opinions of Dr. Jack, who rendered a consultative examination in 2005. Dr. Jack documented mechanical back pain, and stated that he found evidence "of significant lumbar scoliosis" and "neck pain, mechanical" (Tr. 110, 111.) He also observed from his examination that Plaintiff "appeared to be in significant discomfort with minimal movement" and noted limitations in range of motion. (*Id.* 108, 109.) These are specific medical findings that could not be ignored by the ALJ. See *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (a medical doctors's statements about Plaintiff's condition or impairments "are specific medical findings" and an ALJ errs in rejecting those findings in the absence of conflicting evidence).

Further, the ALJ appeared to selectively pick what evidence in the report supported his findings (*e.g.*, noting that Dr. Jack stated that Plaintiff could take off his shoes, which were high-laced boots and two layers of socks, without any apparent difficulty), while improperly discounting the findings that supported Dr. Jack's opinions (such as his finding that Plaintiff appeared to be in significant discomfort with minimal movement). This was improper. *Lee*, 2004 WL 2810224, at *3 n. 2 ("The ALJ may not

simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability").

I also find error with the ALJ's finding that Dr. Jack noted Plaintiff's cooperation was suspect. Dr. Jack did not make that finding in his report. Instead, he documented his observations and examination of Plaintiff which led him to find that Plaintiff's neck and back pain were real as was his finding of lumbar scoliosis. The ALJ's assumption or speculation that certain isolated statements made in Dr. Jack's report support his finding that Dr. Jack believed Plaintiff's cooperation was suspect is unfounded.

For example, the ALJ found that the cooperation of Plaintiff was suspect based on Dr. Jack's notation that as Plaintiff maneuvered about "going from a seated position to standing position and moving about on the exam table" he did "all these things very slowly and moans and groans during the slightest movements". (Tr. 19, 110.) The ALJ found that this was suspect based on Plaintiff's examination which showed normal muscle bulk and tone, with no evidence of atrophy or muscle wasting. (*Id.* at 19.) However, the fact that Plaintiff had normal muscle bulk and tone does not mean that he was not in pain and/or that he did not have "lumbar scoliosis", degenerative disc disease, or a similar medical impairment. Indeed, Dr. Jack made specific medical findings that Plaintiff was in pain and found that Plaintiff had a medical impairment which could plausibly cause such pain—significant lumber scoliosis. Further, Dr. Jack made no comments to indicate that he thought this diagnosis was suspect.

Even standing alone (without consideration of the x-rays or the suspected degenerative disc disease), evidence of significant lumbar scoliosis found by Dr. Jack could be enough to meet the de minimus showing of impairment required to move on to

further steps in the sequential evaluation. This evidence when combined with Dr. Jack's findings about Plaintiff's work restrictions certainly could be sufficient to show that the impairment has more than a minimal effect on Plaintiff's ability to work, particularly when the pain that Dr. Jack and other doctors (including Drs. Turner and Repert) noted that Plaintiff had is also considered. *See Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994) ("The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform given the level of pain [she] suffers'") (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted). The ALJ erred in not properly considering this evidence.

Turning to the degenerative disc disease which Dr. Jack also suspected Plaintiff had, the ALJ chose to reject Dr. Jack's findings in their entirety (even those as to pain and lumbar scoliosis) because "it appears Dr. Jack's *suspicions* were not confirmed" by the x-rays that he ordered". (Tr. at 19.) However, the x-ray results did not suggest that there were no abnormalities. Instead, the films showed "loss of normal cervical curve, most likely . . . secondary to muscle spasm, minimal disc space narrowing of C3-4" and "minimal disc space narrowing . . . at L5-S1". (Tr. 112.)

The ALJ's decision that the x-rays proved that Dr. Jack's suspicions of degenerative disc disease (and other findings) were unfounded is not documented from the record and is an improper attempt to substitute his own medical judgment for that of mental health professionals. *Winfrey*, 92 F.3d at 1021-22; *see also Miranda v. Barnhart*, 205 Fed. Appx. 638, 641 (10th Cir. 2005) ("The ALJ's approach impermissibly put him in the position of judging a medical professional on the assessment of medical data, in this case [the claimant's] statements). Accordingly, the finding that Plaintiff is

not credible on this basis is unsupported by the evidence.  *See Kepler v. Chater*, 68
F.3d 387, 391 (10th Cir. 1995) ("[f]indings as to credibility should be closely and
affirmatively linked to substantial evidence and not just a conclusion in the guise of
findings'") (quotations omitted).

The above analysis also applies to the ALJ's finding that Plaintiff was not credible
because "[n]o diagnostic findings demonstrate any medically determinable impairment
of even a slight abnormality that would expect to have more than a minimal effect on the
claimant. . . ."  (Tr. at 19.)  Again, this is not consistent with the x-rays and/or is an
improper attempt to substitute the ALJ's judgment for that of Dr. Jack.  At the very least,
if the ALJ felt that Dr. Jack's opinions were unclear on this issue based on the results of
the x-ray films, he had a duty to contact him for clarification of his opinions.  *McGoffin v.
Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

I also note that the findings from the x-rays appear to substantiate earlier findings
by Dr. Turner in 2000 that showed some borderline disc space height loss at C4-5 and
C5-6 and some mild bulging of the disc at T8-9.  (Tr. 18 (citing Exhibit 3F).)  Indeed, it
appears that the x-rays could be read to show that Plaintiff's impairments had actually
worsened from 2000 to 2005.  This, however, is a medical issue that a physician would
have to address.

The ALJ also rejected Dr. Jack's opinions because he found that "Dr. Jack relied
quite heavily on the subjective report of symptoms and imitations provided by the
claimant, and seems to uncritically accept as true most, if not all, of what the claimant
reported, particularly his *significant low back pain and neck pain*."  (Tr. 19.)  Again, I find
error with this.  An ALJ may not reject the opinions of a physician "based merely on his

own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints." *Langley*, 373 F.3d at 1121. "The ALJ [must have] a legal or evidentiary basis for his finding that [a treating physician's] opinions were based merely on Plaintiff's subjective complaints." *Id.*; *see also Garcia v. Barnhart*, No. 05-2322, 2006 WL 1923984, at *3 (10th Cir. 2006) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from correct legal standards and his decision is not supported by substantial evidence").

In this case, Dr. Jack made specific medical findings as to what the evidence showed him from his examination of Plaintiff. Thus, there was evidence that the doctor's opinions were not based only on Plaintiff's subjective complaints. Indeed, there is nothing in the record that the opinions were based even partially on Plaintiff's complaints.

I also note as to Dr. Jack that the ALJ found his limitations on Plaintiff's working ability were inconsistent with the record as a whole and with Plaintiff's testimony. (Tr. 19.) The ALJ does not, however, state what portion of the record he is relying on to support this statement. Further, as to Plaintiff's testimony, the fact that Plaintiff said he could stand for an hour at a time or walk for an hour at a time are not necessarily inconsistent with Dr. Jack's findings that Plaintiff could only stand/walk for less than two hours total in an eight-hour day. Further, a Plaintiff's statements as to his maximum abilities in a day does not translate to a finding that he could work eight hours a day full-time at that level. *See* Soc. Sec R. 96-8p(1), 1996 WL 374184, at *1 ("RFC is "an assessment of an individual's ability to do sustained work-related physical and mental

-11-

activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule"). Thus, "'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.'" *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (emphasis in original) (quotation omitted).

The ALJ also notes as a basis for his decision that Plaintiff attends to his own personal needs and hygiene, does some housework, throws a baseball, goes dancing, has an occasional beer, studies the law, watches television, helps his mother pull weeds and "walks around bird watching." (Tr. 19, 20.) These activities are not, however, necessarily inconsistent with Plaintiff's diagnoses related to his back and neck pain. Indeed, Plaintiff testified to many limitations in connection with these activities which the ALJ improperly chose to ignore. (*Id.* 134-137.)

Further, "sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). Such diversions also do not provide a basis for concluding that Plaintiff did not have a medically determinable impairment. This constitutes an improper lay opinion of the ALJ. *See McGoffin*, 288 F.3d at 1252. Indeed, I find that this evidence is not relevant in any manner in connection with a step two analysis, which analyzes the objective medical evidence in the case to determine whether an impairment exists.

I next address the ALJ's finding that Plaintiff had not sought any medical treatment or other "conservative modalities such as physical therapy or chiropractic

-12-

sessions" as recommended by several doctors. Again, he uses this to support his conclusion that the objective medical evidence failed to establish the existence of a medically determinable impairment that could be expected to produce Plaintiff's symptoms. I find that this was improper.

First, there was evidence in the record that Plaintiff *was* in physical therapy and a surgeon discontinued it after the discovery of "compression fractures consistent with wedge deformities". (Tr. 132, 133, 137-139.) The ALJ improperly ignored this evidence. While the transcript of the hearing shows that this record may not have been in the file (Tr. at 138-139), the ALJ had a duty to develop the record on this issue once it was raised. In *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996), the Tenth Circuit made clear that "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." In that case, where the ALJ discounted a diagnosis of depression because there were no medical tests to support it, the court remanded for further development of the record on this issue. *Id.*; *see also Grogan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005) (a social security hearing is "nonadversarial in nature, and thus the ALJ bears responsibility for ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised' in that hearing") (quotation omitted); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). Also, the fact that a claimant does not seek certain types of treatment does not undermine the medical findings and diagnoses that must be adequately weighed, particularly in connection with a step two analysis.

Finally, at the hearing the claimant testified that he had not worked since 1998, when he was only earning $4000 - $5000. (Tr. at 127.) On remand, the ALJ should

develop whether the failure to obtain treatment (and the fact that Plaintiff walked 16 miles to a doctor's appointment which the ALJ used to support his findings) were because of his lack of financial resources. A claimant's inability to afford treatment may constitute justifiable cause for failing to comply with prescribed treatment. *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *4 (10th Cir. 2004); Soc. Sec. Reg. 8921-59, 1982 WL 31384, at *4. This must be considered on remand.

III.　CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated March 2, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge